**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**

Carol L. Skinner

    v.                                      Civil No. 09-cv-193-JL

Salem School District

**REPORT AND RECOMMENDATION**

Before the court is Carol L. Skinner's amended complaint
(doc. no. 5), with attachments, and her initial complaint (doc.
no. 1), alleging violations of her rights under 42 U.S.C.
§§ 12101-12213, the Americans with Disabilities Act ("ADA").
Skinner alleges that defendant, Salem School District
("District"), fired her in October 2006 because of a disability
and in retaliation for her complaining to the District
superintendent about disability discrimination in violation of
the ADA.  The matter is before me for a preliminary review to
determine, among other things, whether the pleadings state any
claim upon which relief might be granted.  See 28 U.S.C.
§ 1915(e)(2)(B); United States District Court District of New
Hampshire Local Rule ("LR") 4.3(d)(1)(B) (magistrate judge
directed to perform preliminary review of complaints filed in
forma pauperis).

In the interest of fairness to the pro se litigant and
judicial economy, I construe the Complaint for all purposes to

consist of Skinner's initial complaint (doc. no. 1), her amended

complaint (doc. no. 5), and the attached exhibits.  See Fed. R.

Civ. P. 10(c) ("A copy of a written instrument that is an exhibit

to a pleading is a part of the pleading for all purposes.").

Standard of Review

Under this court's local rules, when a plaintiff commences

an action pro se and in forma pauperis, the magistrate judge

conducts a preliminary review.  LR 4.3(d)(1)(B).  In conducting

the preliminary review, the Court construes a pro se complaint

liberally, however inartfully pleaded.  See Erickson v. Pardus,

551 U.S. 89, 94 (2007) (per curiam).  "The policy behind

affording pro se plaintiffs liberal interpretation is that if

they present sufficient facts, the court may intuit the correct

cause of action, even if it was imperfectly pled."  Ahmed v.

Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v.

United States, 540 U.S. 375, 381 (2003) (courts may construe pro

se pleadings to avoid inappropriately stringent rules and

unnecessary dismissals).  The court must accept as true the

plaintiff's factual assertions, see Erickson, 551 U.S. at 94, and

any inferences reasonably drawn therefrom.  See Centro Medico del

Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5–6 (1st Cir.

2005); <u>Ayala Serrano v. Lebron Gonzalez</u>, 909 F.2d 8, 15 (1st Cir. 1990).  This review ensures that pro se pleadings are given fair and meaningful consideration.

<u>Background</u>

Skinner worked for the District for ten years in food service, first as a substitute and ultimately in a permanent position at Salem High School, ending in October 2006.  She performed her work well, generally got her work done, and wanted to keep her job.  From late November 2005 through January 2006, Skinner took time off for knee surgery.  She returned to work and completed the school year in the same job.

Skinner came back to work when the new school year began in August 2006.  Because people seemed "unkind" to her, she had a feeling something was going to happen.  Amended Complaint (doc. no. 5) at 3.  Her knee was very painful, causing her to walk slowly, and she used a cane to alleviate the pain.  Skinner generally did not use the cane in the kitchen, except for balance when she was cleaning up or carrying sandwiches to the cart.  The District's Food Service Director, Barbara Schultz, saw her using a cane on August 23 and told her not to use it because it was hazardous to everyone in the kitchen.  After seeing Skinner use

the cane again on August 30, Schultz sent Skinner home, telling her to obtain a doctor's note before returning with the cane.

Before leaving, Skinner told the District superintendent, Michael Delahanty, that Schultz sent her home because of her cane, and she did not know why, since she was not using the cane in the kitchen.  In a meeting on September 1 to discuss the issue, Delahanty gave Skinner a form for her doctor to fill out. Skinner's doctor sent a note to the District stating that she could return to full activity on September 6, 2006, without restrictions.[1]  Skinner returned to work on September 6.

On October 2, 2006, Skinner attended a meeting with Schultz, Skinner's immediate supervisor, Pat Dozibrin, and Linda Moreau, President of the Salem Association of Food Service Personnel. Skinner expected that the meeting would relate to her disability and include her Union representative, Greg Andruschkevich. Andruschkevich did not attend, however, because he had been told not to come.  At the meeting, Skinner received a termination

---

[1]This opinion was inconsistent with a medical expert's opinion, issued in 2007, that Skinner suffered from severe arthritis in her right knee and left foot, with an onset date of January 2005.  This opinion provided the basis for a federal reviewing official's decision to reverse the state agency's denial of Skinner's social security disability application in October 2007.

letter.  The District told Skinner that she was too slow.
Skinner believes, however, that the true reasons for her
termination were her rate of pay and her disability.  <u>See</u> Amended
Complaint (doc. no. 5) at 3, 6 & 10; Ex. to Am. Complaint (doc.
no. 5-2) at 2.

On October 17, 2006, Skinner filed a complaint with the New
Hampshire Commission on Human Rights ("NHCHR") and the Equal
Employment Opportunity Commission ("EEOC"), charging that the
District had discriminated against her on the basis of a
disability and had discharged her in retaliation for her
complaining to the superintendent about disability
discrimination.  <u>See</u> <u>Skinner v. Salem Sch. Dist.</u>, NHCHR Charge
No. ED(R)0018-07/EEOC Charge No. 16D-2007-00013.  The NHCHR
investigated and ultimately dismissed the charges, finding "no
probable cause."  Amended Complaint (doc. no. 5) at 23.

Skinner received notice of the NHCHR's decision in a letter
to her lawyer, dated October 10, 2008, which informed Skinner of
her right to move for reconsideration, to appeal in state court,
to request review by the EEOC, and to file suit in federal court
under the ADA.  <u>Id.</u> at 9 & 22.  The cover letter stated that the
NHCHR would send a report to the EEOC.

On November 4, 2008, Skinner faxed a request to the NHCHR asking for additional time to respond because she was in the hospital with a broken hip, and her lawyer would not represent her.  The NHCHR granted Skinner additional time to move for reconsideration, setting a deadline of January 9, 2009.  Skinner never moved for reconsideration or otherwise responded because she was in a rehabilitation hospital -- recovering from total knee replacement surgery -- in January 2009 and could not find a lawyer.  The record does not indicate whether Skinner ever requested or received a separate right to sue letter from the EEOC on her parallel ADA charge.

In June 2009, Skinner filed her original complaint (doc. no. 1) in this Court.  In an Order issued thereafter (doc. no. 4), I directed Skinner to:  describe more fully the nature of her employment discrimination claims; demonstrate that she had exhausted administrative remedies; and, specifically, provide the Court with a copy of a right to sue letter from the EEOC. Skinner responded by filing the amended complaint (doc. no. 5) with exhibits including the NHCHR decision and NHCHR right to sue letter, which she apparently considers to be equivalent to an EEOC letter.  See Amended Complaint at 6 (doc. no. 5).

Skinner has asserted the following claims in the Complaint:

1.   The District is liable for employment discrimination under Title I of the ADA, 42 U.S.C. § 12112(a), for discharging Skinner because of a disability.

2.   The District is liable for disability discrimination under Title II of the ADA, 42 U.S.C. § 12132, for discharging Skinner because of her disability.

3.   The District is liable under the Title IV of the ADA, 42 U.S.C. § 12203(a), for discharging Skinner in retaliation for her complaining to the District Superintendent about disability discrimination.

Discussion

I.   Statutory Background

Title I of the ADA provides, in pertinent part, that no public or private employer shall "discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . [the] discharge of employees . . . ."  42 U.S.C. § 12112(a).  Skinner's first claim is based on this prohibition.

Title II of the ADA provides, in pertinent part, that qualified individuals with disabilities shall not be subjected to discrimination by a "public entity."  42 U.S.C. § 12132. Skinner's second claim of employment discrimination is asserted under this prohibition.

Title IV of the ADA prohibits retaliation against those who

report disability discrimination.  In pertinent part, the statute

provides that "[n]o person shall discriminate against any

individual because such individual has opposed any act or

practice made unlawful" by the ADA.  42 U.S.C. § 12203(a).

Skinner's third claim arises under this statute.

II.  Title II "Public Entity" Claim (Claim II)

       Skinner's Title II claim, asserted against the District in

its capacity as a "public entity" under 42 U.S.C. § 12132, is not

subject to any administrative exhaustion requirements or

conditions precedent to filing suit in federal court.  See

Bledsoe v. Palm Beach County Soil & Water Conserv. Dist., 133

F.3d 816, 823 (11th Cir. 1998).  There is, however, a split among

the circuits on whether Title II provides a cause of action for

public employment discrimination, and the First Circuit has not

resolved the issue.  See Carmona-Rivera v. Puerto Rico, 464 F.3d

14, 18 (1st Cir. 2006).  In light of the discussion of the issue

in Currie v. Group Ins. Comm'n, 290 F.3d 1, 6 (1st Cir. 2002)

(questioning, without explicitly reversing, district court's

decision to find Title II inapplicable in the public employment

context), and for the reasons set forth in Bledsoe, 133 F.3d at

820-25, I conclude that a plaintiff in Skinner's position may

assert a claim of employment discrimination under Title II

without first obtaining a right to sue letter from the EEOC.

Finding that Skinner has alleged sufficient facts to state a

viable claim of disability discrimination under 42 U.S.C.

§ 121312, I will allow Skinner's second claim to proceed and will

direct service of Claim II on the defendant in an Order issued

this date.

III. <u>Title I & IV ADA Claims (Claims I & III)</u>

Persons alleging disability discrimination under Title I or

retaliation under Title IV of the ADA must first show that they

have exhausted their administrative remedies.  <u>See</u> 42 U.S.C.

§§ 12117(a) & 12203(c) (Title I and Title IV claims are subject

to procedural requirements of 42 U.S.C. § 2000e-5).  Filing an

administrative claim with the EEOC or a designated state agency

is a condition precedent to filing an action in federal court on

these claims under the ADA.  <u>See</u> <u>Bonilla v. Muebles J.J. Alvarez,</u>

<u>Inc.</u>, 194 F.3d 275, 277 (1st Cir. 1999).  If the EEOC finds that

there is no reasonable cause to believe that unlawful employment

discrimination occurred, the EEOC will issue its final

determination in a letter informing the person of his or her

right to sue in federal court within 90 days of receipt of the

letter.  See 29 C.F.R. § 1601.19(a).  The NHCHR is certified by

the EEOC to investigate and issue findings on certain federal

employment discrimination charges.  See 29 C.F.R. § 1601.80.  The

EEOC generally accepts the NHCHR's determination of "no probable

cause" as final, without individual case-by-case review, unless

the claimant asks the EEOC to review the state agency

determination within 15 days, or the charge involves an issue

designated by the EEOC for priority review.  See 29 C.F.R.

§ 1601.75.  The person alleging employment discrimination under

Title I and IV of the ADA must generally file an action in

federal court within 90 days of receiving a right to sue letter

from the EEOC.  See 42 U.S.C. § 12117(a); see also id. § 2000e-

5(f)(2); see also Chico-Velez v. Roche Products, Inc., 139 F.3d

56, 58 (1st Cir. 1998).

    Here, Skinner filed disability discrimination claims under

state and federal law with the pertinent administrative agencies,

including claims under Titles I and IV of the ADA.  The NHCHR, as

the designated state agency, dismissed all of Skinner's charges,

finding no probable cause to prosecute, and issued her a right to

sue letter on October 10, 2008.  The NHCHR letter states that the

NHCHR would close its file and send a report to the EEOC.

Skinner's subsequent failure to request EEOC review of the
NHCHR's decision within 15 days caused the EEOC to accept the
NHCHR's determination as final, pursuant to EEOC regulations.
See 29 C.F.R. § 1601.77.  The record does not indicate, however,
whether the EEOC issued Skinner a right to sue letter thereafter,
which would have triggered the 90-day time limit for her filing
suit in federal court on her Title I and Title IV ADA claims.

Thus, Skinner has demonstrated that she took steps to
exhaust her administrative remedies on her Title I and Title IV
retaliation claims, but has not demonstrated that the EEOC
completely processed her claim.  Her failure to produce an EEOC
right to sue letter in response to my Order suggests that she
cannot satisfy this condition precedent to filing a federal court
action on her claims.  See Black v. Brown Univ., 555 F. Supp.
880, 884 n.8 (D.R.I. 1983) (right to sue letter from Rhode Island
equal employment agency was not equivalent to EEOC letter for
purposes of triggering 90 day time limit).  While this condition
precedent may be equitably modified in appropriate cases, Skinner
has not argued that equitable tolling is appropriate here.  See
id. at 885 (court applied equitable powers to avoid dismissing
case upon determining that EEOC had "lulled" plaintiff into

believing he did not have to obtain separate EEOC letter); cf.
Chico-Velez v. Roche Products, Inc., 139 F.3d 56, 58-59 (1st Cir.
1998) ("Federal courts should not apply equitable tolling
liberally to extend time limitations in discrimination cases.").
I, therefore, recommend that Skinner's Title I and Title IV
claims be dismissed without prejudice at this time; Skinner may
file an action in federal court in the future asserting her Title
I and IV ADA claims within 90 days after she receives an EEOC
right to sue letter.  Acceptance of my recommendation of
dismissal without prejudice will leave only Skinner's Title II
disability discrimination claim pending against the District in
this action at this time.

### Conclusion

For the reasons discussed more fully above, I recommend that
Skinner's first and third claims, asserting disability
discrimination and retaliation under ADA Titles I and IV, be
dismissed without prejudice.  Skinner's second claim, asserting
disability discrimination under Title II of the ADA, 42 U.S.C.
§ 12132, may proceed.  I will direct service of the Title II
claim in an Order issued this date.

The claims identified in this Report and Recommendation will

be considered for all purposes to be the claims raised in the

Complaint (docs. no. 1 & 5).  If Skinner disagrees with the

identification of the claims herein, she must do so by objection

filed within ten (10) days of receipt of this notice or properly

move to amend the Complaint.

Any objection to this Report and Recommendation must be

filed within ten days of receipt of this notice.  Failure to file

an objection within the specified time waives the right to appeal

the district court's order.  See Unauthorized Practice of Law

Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United

States v. Valencia-Copete, 792 F.2d 4,6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date: September 8, 2009

cc:  Carol Skinner, pro se

14