```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

Carol Skinner

    v.                                     Civil No. 09-cv-193-JL
                                               Opinion No. 2010 DNH 106

Salem School District


**MEMORANDUM ORDER**

This case presents a question that has divided the federal circuit courts of appeal: whether a public employee may bring an employment discrimination claim under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, which prohibits disability discrimination by public entities. Compare Bledsoe v. Palm Beach County Soil & Water Conservation Dist., 133 F.3d 816 (11th Cir. 1998) (allowing such claims), with Zimmerman v. Or. Dep't of Justice, 170 F.3d 1169 (9th Cir. 1999) (disallowing them). Plaintiff Carol Skinner sued her former employer, the Salem School District, alleging that it discriminated against her and ultimately fired her from a food service job because she has a disabling arthritic condition. This court, which has jurisdiction under 28 U.S.C. § 1331 (federal question), construed Skinner's pro se complaint as asserting a claim under Title II.[1]

---

[1] Documents no. 6 and 8 (applying Local Rule 4.3(d)(1)). This court also construed Skinner's complaint as asserting claims

The school district has moved for judgment on the pleadings, see Fed. R. Civ. P. 12(c), arguing that Title II cannot be used to bring an employment discrimination claim because the proper vehicle for such a claim is Title I, which expressly prohibits disability discrimination in employment. See 42 U.S.C. § 12112(a). After oral argument, the motion is denied. Although this court believes that the sounder construction of Title II excludes employment discrimination claims, our court of appeals has noted that "the language of Title II [is not] clear on this question" and that it "is not unheard of for individuals to have overlapping rights." Currie v. Group Ins. Comm'n, 290 F.3d 1, 6 (1st Cir. 2002). Since the statute is therefore ambiguous, this court must defer to the implementing agency, which has reasonably construed Title II as encompassing employment discrimination claims against public entities. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984) (requiring deference to implementing agency where it reasonably resolves a statutory ambiguity).

---

under Titles I and IV of the ADA, but dismissed those claims without prejudice because she had not exhausted her administrative remedies. Id. Title II is not subject to that exhaustion requirement, as discussed infra.

## I. Applicable legal standard

A motion for judgment on the pleadings under Rule 12(c) is evaluated under essentially the same standard as a Rule 12(b)(6) motion for failure to state a claim. See Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). To survive such a motion, the party bringing the claims must make "factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" Simmons v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Here, the school district's motion does not hinge on the specific facts alleged in Skinner's complaint; it raises a purely legal question about the scope of Title II. Questions of statutory interpretation are "ripe for resolution at the pleadings stage." Id.

## II. Analysis

The sole issue raised by the school district's motion is whether a public employee may bring an employment discrimination claim under Title II of the ADA, which provides:

3

> [N]o qualified individual with a disability[2] shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The school district argues that employment is not a public service, program, or activity within the meaning of Title II and falls instead under Title I, which expressly prohibits disability discrimination in employment. See 42 U.S.C. § 12112(a). Skinner argues, in response, that where the employer is a public entity, an employment discrimination claim may be brought under either Title I or Title II.

Many federal courts have already ruled upon this issue, including two circuit courts of appeal. They reached opposite conclusions. Compare Bledsoe, 133 F.3d at 816, 820-22 (allowing employment discrimination claims against public entities under Title II), with Zimmerman, 170 F.3d at 1169 (disallowing them). Both the Supreme Court and First Circuit have also commented on the issue, albeit in dicta. See Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 360 n.1 (2001); Currie, 290 F.3d at 6.

---

[2] A "qualified individual" is defined as "an individual with a disability who, with or without reasonable modifications . . ., meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

This court will summarize each of those authorities before reaching its own conclusion.

**A.   *Eleventh Circuit decision***

In the first circuit court case to address this issue, the Court of Appeals for the Eleventh Circuit concluded that employment discrimination claims may be brought against public entities under Title II.  See Bledsoe, 133 F.3d at 816.  The court began by discussing congressional purpose and legislative history.  It noted that Congress's stated intent in passing the ADA was "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," including in the employment context.  Id. at 820 (citing 42 U.S.C. § 12101(b)(1)).  Furthermore, the court noted that "[e]xtensive legislative commentary regarding the applicability of Title II to employment discrimination . . . is so pervasive as to belie any contention that Title II does not apply to employment actions."  Id. at 821 (citing examples).

Turning to the statutory language, the Eleventh Circuit compared Title II with section 504 of the Rehabilitation Act, on which Title II was modeled.  Id.  Section 504 prohibits disability discrimination in "any program or activity receiving Federal financial assistance," 29 U.S.C. § 794(a), much like how

Title II prohibits disability discrimination in "the services, programs, and activities of a public entity," 42 U.S.C. § 12132. In an earlier case, the Supreme Court had deemed it "unquestionable that . . . section [504] was intended to reach employment discrimination." Consol. Rail Corp. v. Darrone, 465 U.S. 624, 632 (1984). The Eleventh Circuit reasoned that "Congress intended Title II to work in the same manner as Section 504." Bledsoe, 133 F.3d at 821.

Indeed, the Eleventh Circuit emphasized that Congress used even broader language in Title II than in the Rehabilitation Act, adding a "catch-all" phrase at the end--i.e., protecting qualified individuals from being "subjected to discrimination"--that "prohibits all discrimination by a public entity, regardless of the context." Id. at 822 (quoting Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 44-45 (2d Cir. 1997)). In light of that "catch-all" phrase, the congressional purpose, the legislative history, and the Supreme Court's interpretation of the Rehabilitation Act, the Eleventh Circuit concluded that "employment coverage is clear from the language and structure of Title II." Id.

Even if the statute were unclear, however, the Eleventh Circuit noted that the DOJ, to which Congress gave authority to promulgate regulations implementing Title II, see 42 U.S.C.

§ 12134, has expressly construed the statute as encompassing employment discrimination claims. See 28 C.F.R. § 35.140(a). Where a federal statute "is silent or ambiguous with respect to the specific issue" and Congress delegates "authority to the agency to elucidate a specific provision of the statute by regulation," courts must defer to the agency's interpretation unless it is arbitrary or capricious. Chevron, 467 U.S. at 842-43. Calling the DOJ regulation a "reasonable construction of statutory language," the Eleventh Circuit deemed it worthy of such deference. Bledsoe, 133 F.3d at 823.

**B.   *Ninth Circuit decision***

In the other circuit court case addressing this issue, the Court of Appeals for the Ninth Circuit reached the opposite conclusion, ruling that Title II may not be used to bring an employment discrimination case against a public entity. See Zimmerman, 170 F.3d at 1169. While acknowledging that "most courts have held that Title II applies to employment" by virtue of the legislative history and the DOJ regulations, id. at 1183, the Ninth Circuit concluded that the analysis never should have gone that far, because "when viewed as a whole, the text, context, and structure of the ADA show unambiguously that

Congress did not intend for Title II to apply to employment," thus foreclosing any review of extrinsic sources. Id. at 1178.

Starting with the text, the Ninth Circuit interpreted Title II's phrase "services, programs, and activities" as referring "only to the 'outputs' of a public agency, not to 'inputs' such as employment." Id. at 1174. As for the "catch-all" phrase at the end of Title II, the court concluded that it "relates back to the same 'services, programs, or activities.'" Id. at 1175. In support of this reading, the court noted that Title II's heading is "Public Services" and that its definition of a "qualified individual" is a disabled person who "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." Id. (quoting 42 U.S.C. § 12131(2)). The reason that Congress included the "catch-all" phrase, the court surmised, is to target intentional discrimination, in contrast to the preceding language, which targets de facto discrimination. Id. at 1176.

Turning to the ADA's structure, the Ninth Circuit emphasized that Title II says nothing about employment, whereas Title I expressly covers employment discrimination by public entities at the state and local level and imposes a number of specific conditions on such claims, including a requirement of

administrative exhaustion (which does not apply to Title II). Id. at 1177-78. The court reasoned that if such claims could be brought under Title II without satisfying those conditions, then Title I would become "completely superfluous" in that regard. Id. Moreover, the court noted that Congress tasked two different agencies with implementing the two provisions--the Equal Employment Opportunity Commission for Title I, the DOJ for Title II--meaning that there would be a (presumably unintended) risk of inconsistent regulation if both provisions covered employment discrimination. Id.

Finally, the Ninth Circuit rejected the analogy between Title II and section 504 of the Rehabilitation Act, noting that the two provisions use slightly different language and have very different contexts. Id. at 1180-81. Most notably, the Rehabilitation Act does not contain a separate provision relating to employment discrimination. Id. Indeed, after the Supreme Court ruled in Darrone, supra, that section 504 encompassed employment discrimination, "Congress amended the Rehabilitation Act to incorporate the employment provisions from Title I of the ADA," not Title II, thereby undermining the argument that Title II is linked to the Rehabilitation Act on that issue. Id. at 1182-83 (citing 29 U.S.C. § 794(d)).

The Ninth Circuit denied a request to rehear the case en banc. See Zimmerman, 183 F.3d at 1161. Dissenting from that denial, Judge Reinhardt argued that the panel's textual interpretation was based on an "outputs/inputs" distinction that appears nowhere in Title II's text, id. at 1164, that the panel's structural interpretation failed to acknowledge that statutes frequently overlap, id. at 1166, and that Title II's language is "unquestionably broader" than section 504 of the Rehabilitation Act, not narrower. Id. at 1163. At most, he said, the panel's opinion suggests that there is a statutory ambiguity, id. at 1162, in which case the legislative history and the DOJ regulations both compel the conclusion that employment discrimination claims may be brought under Title II. Id. at 1167-68.

## C. *Supreme Court dicta*

The Supreme Court has never addressed this issue on the merits, but it briefly commented on the circuit split in the following footnote from Garrett, 531 U.S. at 356:

> [N]o party has briefed the question whether Title II of the ADA, dealing with the "services, programs, or activities of a public entity," 42 U.S.C. § 12132, is available for claims of employment discrimination when Title I of the ADA expressly deals with that subject. See, e.g., Russello v. United States, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language

> in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"). The Courts of Appeals are divided on this issue, compare Zimmerman, 170 F.3d at 1169, with Bledsoe, 133 F.3d at 816. . . . To the extent the Court granted certiorari on the question whether respondents may sue their state employers for damages under Title II of the ADA, that portion of the writ is dismissed as improvidently granted.

Id. at 360 n.1. While obviously not conclusive, this passage suggests that the Court was somewhat skeptical about using Title II to bring employment discrimination claims expressly covered by Title I.

### D.  *First Circuit dicta*

About a year after Garrett, the First Circuit reviewed a case in which the lower court had endorsed the Ninth Circuit's reasoning in Zimmerman, deeming Title II inapplicable to employment discrimination claims as a matter of plain meaning. See Currie, 290 F.3d at 1 (reviewing Currie v. Group Ins. Comm'n, 147 F. Supp. 2d 30 (D. Mass. 2001)). While ultimately staying the case on abstention grounds, the First Circuit addressed the Title II issue briefly in dicta, questioning the lower court's reasoning:

11

> The answer is not so plain.  While Title I's
> language clearly covers employment discrimination, and
> public employers are not exempted from the definition
> of a covered entity, Title I says nothing about it
> being an exclusive remedy or avenue for suit.  It is
> not unheard of for individuals to have overlapping
> rights, even within one Act.  Here, the two Titles
> grant substantively different rights--for instance,
> while Title I gives successful plaintiffs the
> opportunity to obtain compensatory and punitive
> damages, there is no such right under Title II.  Nor
> is the language of Title II clear on this question.
> The words "public services, programs, or activities"
> do not necessarily exclude employment, and the
> "subjected to discrimination" clause may broaden the
> scope of coverage further.  Moreover, the Department
> of Justice has promulgated a regulation stating that
> Title II does cover employment practices.  This
> regulation is entitled to deference under the Chevron
> doctrine if the statutory language is unclear.  In
> addition, [the plaintiff] cites to legislative history
> which she says demonstrates that Congress intended
> Title II to cover employment and to function in the
> same manner as Section 504 of the Rehabilitation Act.

Id. at 6-7 (citations and footnotes omitted).  The First Circuit recently confirmed that the "law in this circuit remains unclear as to whether Title II of the ADA even applies to claims of employment discrimination."  Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 17 (1st Cir. 2006).

### III. Conclusion

If asked to decide which interpretation of Title II is better supported, this court would be more inclined to follow the Ninth Circuit's reasoning in Zimmerman, which is based

primarily on textual methods of statutory construction, than the Eleventh Circuit's reasoning in Bledsoe, which relies heavily on extrinsic sources and overlooks a number of significant textual cues (such as Title II's heading, its definition of a qualified individual, its differences from Title I, and the overall structure of the ADA). While both opinions make reasonable arguments based on the statutory text and structure, the stronger position seems to be that Title II cannot be used to bring employment discrimination claims, which are expressly covered by Title I and subject to restrictions not reflected in Title II. Indeed, the Supreme Court's dicta in Garrett, 531 U.S. at 360 n.1, appears to reflect the same instinct.

But this court's task is not to decide which interpretation is better supported; rather, it is to determine whether the statute is clear on this issue and, if not, whether the DOJ's interpretation of the statute as encompassing employment discrimination claims is a reasonable resolution of the statutory ambiguity. See Chevron, 467 U.S. at 842-43. The First Circuit essentially answered that question in Currie, where it stated that "the language of Title II [is not] clear on this question" and arguably could be construed as extending to employment. 290 F.3d at 6. Moreover, even without that First Circuit dicta, the Eleventh Circuit's opinion in Bledsoe, Judge

Reinhardt's dissent in Zimmerman, and the many similar district court decisions evince at least some measure of ambiguity. Because the DOJ's interpretation of Title II reasonably resolves that ambiguity, it is entitled to deference under the Chevron doctrine. When that deference is accorded, Title II of the ADA authorizes employment discrimination claims against public entities.

For the reasons set forth above, Salem School District's motion for judgment on the pleadings[3] is DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: June 18, 2010

cc: Carol Skinner, pro se
    Debra Weiss Ford, Esq.

---

[3]Document no. 18.

14